**In re AMERICAN HARDWOODS, INC., Debtor.**

**AMERICAN HARDWOODS, INC., Plaintiff–Appellant,**

v.

**DEUTSCHE CREDIT CORPORATION, Defendant–Appellee.**

**No. 87–4438.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 1989.

Decided Sept. 15, 1989.

Susan MacDonald Nelson, Ball, Janik & Novack, Portland, Or., for plaintiff-appellant.

John P. Davenport, Sussman, Shank, Wapnick, Caplan & Stiles, Portland, Or., for defendant-appellee.

Before BROWNING, WALLACE and FLETCHER, Circuit Judges.

WALLACE, Circuit Judge:

American Hardwoods, Inc. (American) appeals from a district court order affirming the bankruptcy court's partial summary judgment in favor of Deutsche Credit Corporation (Deutsche). American argues that the bankruptcy court erred in holding that it lacked both jurisdiction and power to enjoin Deutsche permanently from enforcing a state court judgment against Craig and Gabriele Keeler (the Keelers), who are nondebtor guarantors of American's liabilities to Deutsche. The district court had jurisdiction pursuant to 28 U.S.C. § 158(a) and we have jurisdiction pursuant to 28 U.S.C. § 158(d). We affirm.

I

The Keelers are the president and vice president of American, which manufacturers hardwood veneer and veneer-faced plywood. To manufacture its plywood, American uses large machinery, which was financed by Deutsche. The Keelers initially purchased this machinery then transferred it to American in consideration for the company's assumption of liability for the debt.

On December 9, 1986, Deutsche obtained an order in Oregon state court permitting Deutsche to seize American's machinery. In response, American filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in United States bankruptcy court and obtained an automatic stay under 11 U.S.C. § 362. The Keelers did not offer to contribute assets to American's bankruptcy estate. Deutsche then moved for summary judgment in state court against the Keelers, who remained jointly and severally liable for American's debt. American commenced an adversary proceeding in the bankruptcy court, seeking to enjoin Deutsche preliminarily and permanently from both continuing its state court action against the Keelers and from enforcing any state court judgment against them. American argued that pursuance by Deutsche of its state court action against the Keelers would irreparably harm American's efforts to confirm and administer a reorganization plan.

The bankruptcy court temporarily enjoined Deutsche from enforcing any state court judgment against the Keelers until trial on the merits of American's motion. Deutsche moved for partial summary judgment on the grounds that any injunction the bankruptcy court could issue would have to terminate upon confirmation of a Chapter 11 plan or conversion to a Chapter 7 bankruptcy. Following trial, the bankruptcy court awarded preliminary relief to American, but denied its request for a permanent injunction. The bankruptcy court found that American's efforts to confirm and administer a reorganization plan would likely fail if Deutsche were to enforce the

state court judgment against the Keelers. Nonetheless, the court concluded that it lacked both jurisdiction and power to order a permanent injunction against nondebtors. The bankruptcy court therefore enjoined Deutsche from enforcing the state court judgment against the Keelers until the plan was confirmed or 60 days had elapsed, whichever came later. The district court affirmed the bankruptcy court's judgment. We review the district court's findings of fact for clear error and its conclusions of law independently. *Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir.1986).

## II

This appeal presents a narrow issue of first impression in our circuit: does the bankruptcy court have jurisdiction and power to enjoin permanently, beyond confirmation of a reorganization plan, a creditor from enforcing a state court judgment against nondebtors?

## A.

We first address the issue of subject matter jurisdiction. 28 U.S.C. § 1334(b) grants to federal district courts subject matter jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 151 in turn designates bankruptcy courts as units of the district courts and 28 U.S.C. § 157(a) defines the scope of bankruptcy courts' jurisdiction. Similar to section 1334(b), section 157(a) grants to bankruptcy courts jurisdiction over "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). We must therefore decide whether American's motion is, at a minimum, "related" to a proceeding under title 11. 28 U.S.C. § 1334(b).

In *In re Fietz*, 852 F.2d 455 (9th Cir. 1988) (*Fietz*), we adopted the Third Circuit's definition of a "related" proceeding under section 1334(b). The Third Circuit described the scope of the jurisdictional grant of 28 U.S.C. § 1471(b), section 1334(b)'s identical predecessor, as follows:

The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* [citations omitted]. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Fietz*, 852 F.2d at 457, *quoting Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (*Pacor*) (emphasis in original); *see also Kaonohi Ohana, Ltd. v. Sutherland*, 873 F.2d 1302, 1306–07 (9th Cir.1989) (applying *Pacor* definition of "related"); *accord In re Franklin*, 802 F.2d 324, 326 (9th Cir. 1986) ("Congress' grants of jurisdiction under sections 1334 and 157 conferred upon bankruptcy courts that jurisdiction needed to implement effectively its function of administering the Bankruptcy Code."). We concluded in *Fietz* that the *Pacor* definition effectively promotes Congress's objectives in enacting section 1334(a). The definition (1) serves to reduce time-consuming and expensive litigation concerning a bankruptcy court's jurisdiction over a proceeding and (2) encourages efficient and expeditious resolution of all matters connected to the bankruptcy estate. *Fietz*, 852 F.2d at 457, *citing* H.R.Rep. No. 595, 95th Cong., 2d Sess., 43–48, *reprinted in* 1978 U.S. Code Cong. & Admin.News 5787, 5963, 6004–08; *Pacor*, 743 F.2d at 994.

Under the *Pacor* definition, the bankruptcy court has jurisdiction over an action to enjoin Deutsche if enforcement of the state court judgment against the Keelers " 'could conceivably have any effect' " on the administration of American's bankruptcy estate. *Fietz*, 852 F.2d at 457 (emphasis omitted), *quoting Pacor*, 743 F.2d at 994. Under the *Pacor* rule, the proceeding " 'need not necessarily be against the debtor.' " *Id. quoting Pacor*, 743 F.2d at 994. Indeed, in *Kaonohi*, we found that section 1334(b) granted jurisdiction over an action

involving nondebtors. 873 F.2d at 1306–07. There, a creditor filed an adversary proceeding in bankruptcy court seeking equitable relief—specific performance of a land sale contract—against a nondebtor-noncreditor. We reasoned that jurisdiction existed because this "nondebtor litigation may directly affect the estate's obligation to creditors whose claims are currently before the bankruptcy court." *Id.* at 1307.

American alleges and the bankruptcy court found that Deutsche's enforcement of the state court judgment against the Keelers could affect the bankruptcy proceeding. The bankruptcy court predicted that Deutsche, to satisfy the judgment, would likely execute on the Keelers' stock in American. Without an interest in the company, the Keelers would have little incentive to operate American and maintain the reorganization plan. No legal obstacles have been raised to impede this scenario. Nothing in the reorganization plan shields the Keelers' stock from creditors or obligates the Keelers to continue to operate American. Moreover, based upon the findings of the bankruptcy court, there is an undeniable relationship between the administration of the bankruptcy estate and the outcome of the motion for a permanent injunction. We conclude that Deutsche's enforcement of the judgment against the Keelers "could conceivably" affect the administration of American's plan. *Fietz*, 852 F.2d at 457. Sections 1334(b) and 157(a) therefore confer on the bankruptcy court subject matter jurisdiction over American's motion for a permanent injunction against Deutsche.

In arguing that the court lacked subject matter jurisdiction, Deutsche makes no reference to section 1334 or our law construing it. Rather, Deutsche points to *In re A.J. Mackay Co.*, 50 B.R. 756 (D.Utah 1985) (*Mackay*), a case relied on by the district court in holding that the bankruptcy court lacks jurisdiction to grant American's motion for a permanent injunction. *Mackay* baldly held that the bankruptcy court never possesses jurisdiction to issue an injunction affecting a nondebtor beyond confirmation of a plan. *Id.* at 762. *Mackay* reasoned that "[i]f the protection [of an injunction]

does not end at [confirmation], it is the codebtor who is being protected, not the debtor." *Id.* We find this analysis incomplete and unpersuasive. This circuit's test for jurisdiction is whether the requested injunction "could conceivably" affect the plan—not whether the injunction protects a nondebtor after confirmation.

## B.

■ American moved for a permanent injunction pursuant to the court's equitable power under 11 U.S.C. § 105(a). The district court found that it not only lacked subject matter jurisdiction, but also lacked power under section 105 to order the permanent relief sought by American. Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power under section 105 is the scope and forms of relief the court may order in an action in which it has jurisdiction. *Compare In re Rustic Manufacturing, Inc.*, 55 B.R. 25, 26–27 (Bankr.W.D.Wis.1985) (analyzing court's jurisdiction under 28 U.S.C. § 1334), *with id.* at 30–31 (analyzing court's equitable power under 11 U.S.C. § 105); *see In re Burstein-Applebee Co.*, 63 B.R. 1011, 1020 (Bankr.W.D.Mo.1986) (*Burstein-Applebee*). *But see Mackay*, 50 B.R. at 761–62 (failing to distinguish between subject matter jurisdiction and power). We must therefore decide whether section 105 invests the court with power to order the permanent relief requested by American.

Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105 empowers the court to enjoin preliminarily a creditor from continuing an action or enforcing a state court judgment against a nondebtor prior to confirmation of a plan. *In re A.H. Robins Co.*, 828 F.2d 1023, 1026 (4th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1246, 99 L.Ed.2d 444 (1988); *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002–03 (4th Cir.) (*Piccinin*), *cert. denied,* 479 U.S. 876, 107

S.Ct. 251, 93 L.Ed.2d 177 (1986). Furthermore, section 105 permits the court to issue both preliminary and permanent injunctions after confirmation of a plan to protect the debtor and the administration of the bankruptcy estate. *See Burstein–Applebee*, 63 B.R. at 1020–21 (principals of debtor permanently enjoined from continuing state court action against creditors' committee); *In re Askew*, 61 B.R. 87, 89 (Bankr. S.D.Ohio 1986) (creditor permanently enjoined from continuing state court action regarding discharged debt). American, however, points to no case, and we are aware of none, in which a court permanently enjoined, past confirmation of a plan, a creditor from enforcing a state court judgment against a nondebtor guarantor of a contract liability. Deutsche argues, and the district court held, that its power under section 105(a) to order the relief sought by American ends at confirmation of the plan.

Our interpretation of section 105(a) begins, of course, with its language. *Community for Creative Non–Violence v. Reid,* — U.S. ——, 109 S.Ct. 2166, 2172, 104 L.Ed.2d 811 (1989). Section 105 limits the court to ordering those injunctions "necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). While endowing the court with general equitable powers, section 105 does not authorize relief inconsistent with more specific law. *In re Golden Plan of California, Inc.,* 829 F.2d 705, 713 (9th Cir. 1986) (*Golden Plan*) ("a bankruptcy court's equitable powers must be strictly confined within the prescribed limits of the Bankruptcy Act."); *Johnson v. First National Bank of Montevideo, Minnesota,* 719 F.2d 270, 273 (8th Cir.1983) ("Although a bankruptcy court is essentially a court of equity, its broad equitable powers may only be exercised in a manner which is consistent with the provisions of the Code.") (citations omitted), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). For example, section 105 does not empower the court to award attorney fees absent specific statutory authority, *In re Panaia,* 65 B.R. 865, 869–70 (Bankr.D.Mass.1986), or to order a trustee to recover expenses in a manner not specifically provided for in 11

U.S.C. § 506(c), *Golden Plan,* 829 F.2d at 712–14. Nor does section 105 supersede the Anti–Injunction Act, 26 U.S.C. § 7421(a), which prohibits the court from enjoining the assessment or collection taxes. *In re Heritage Village Church and Missionary Fellowship, Inc.,* 851 F.2d 104, 105 (4th Cir.1988).

Deutsche argues that the permanent injunction sought by American would in effect discharge the Keelers of their liability—a result specifically proscribed by 11 U.S.C. § 524(e). Section 524(e) states that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." As we succinctly explained in *Underhill v. Royal,* 769 F.2d 1426 (9th Cir.1985):

Generally, discharge of the principal debtor in bankruptcy will not discharge the liabilities of codebtors or guarantors.... [Section 524(e)] of the 1978 Bankruptcy Reform Act was a reenactment of Section 16 of the 1898 Act which provided that "[t]he liability of a person who is a co-debtor with, or guarantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt." Act of July 1, 1898, ch. 541, § 16, 30 Stat. 550 (formerly codified at 11 U.S.C. § 34 (1976)).

In addition, the Bankruptcy Act of 1898, as amended, provided that a corporation's discharge in bankruptcy "shall not release its officers, the members of its board of directors or trustees or of other similar controlling bodies, or its stockholders or members, as such, from any liability under the laws of a State or of the United States." Act of June 22, 1938, ch. 575, § 4(b), 52 Stat. 845 (formerly codified at 11 U.S.C. § 22(b) (1976)). Thus, under the old Act, stockholders or directors could remain liable for substantive violations despite discharge of the corporate entity. 1A J. Moore *Collier on Bankruptcy* ¶ 16.14, at 1551 (14th ed. 1978).

*Id.* at 1432; *see also id.* ("The bankruptcy court 'has no power to discharge the liabilities of a bankrupt's guarantor.' "), *quoting*

*Union Carbide Corp. v. Newboles*, 686 F.2d 593, 595 (7th Cir.1982); *id.* (" 'The bankruptcy court can affect only the relationships of debtors and creditor. It has no power to affect the obligations of guarantors.' "), *quoting R.I.D.C. Industrial Development Fund v. Snyder*, 539 F.2d 487, 490 n. 3 (5th Cir.1976), *cert. denied*, 429 U.S. 1095, 97 S.Ct. 1112, 51 L.Ed.2d 542 (1977). Section 524(e), therefore, limits the court's equitable power under section 105 to order the discharge of the liabilities of nondebtors, such as the Keelers.

Although the bankruptcy court was powerless to discharge the Keelers' liability, American argues that it seeks a permanent injunction against the enforcement of a judgment—a remedy distinguishable from discharge. 11 U.S.C. § 524(a)(2), however, describes the effect of a discharge "as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." We find American's semantic distinction between a permanent injunction and a discharge unpersuasive. A discharge under section 524(a)(2) does not void *ab initio* a liability. Rather, section 524 constructs a legal bar to its recovery. A discharge is in effect a special type of permanent injunction. American seeks the same. The permanent injunction requested by American falls squarely within the definition of a discharge under section 524(a)(2). American requests "an injunction against . . . an action . . . to collect . . . [a] debt." 11 U.S.C. § 524(a)(2); *see In re Dickinson*, 24 B.R. 547, 550 (Bankr.S.D. Cal.1982) ("The granting of a discharge operates as a *permanent injunction* against any attempt to collect or recover on a debt. . . .") (emphasis added); Zaretsky, *Co–Debtor Stays in Chapter 11 Bankruptcy*, 73 Cornell L.Rev. 213, 231 (1988) ("[A]ny co-debtor stay [under section 105] is, by its nature, temporary. Section 524(e) . . . states that discharge of a debtor does not affect the liability of third parties on an obligation. Thus, the stay will expire either on its own terms or upon the close of the case, and the creditor may proceed against the co-debtor.") (footnote omitted); *see also In re Elsinore Shore Associates*, 91 B.R. 238, 247–56 (Bankr.D.N.J.1988) (proposed plan not confirmable because it called for discharge of nondebtors; section 105 does not empower court to discharge nondebtors via injunction). We therefore conclude that the specific provisions of section 524 displace the court's equitable powers under section 105 to order the permanent relief sought by American.

Even if we adopted *In re A.H. Robins Co. (Menard–Sanford v. Mabey)*, 880 F.2d 694 (4th Cir.1989) (*Mabey*), it would not dictate a different result. There, A.H. Robins, confronted with an avalanche of tort actions by some 195,000 persons for injuries allegedly sustained through use of an intrauterine contraceptive device known as the Dalkon Shield, filed a petition for bankruptcy under Chapter 11. *Piccinin*, 788 F.2d at 996. The reorganization plan contained an injunction barring certain suits against nondebtor third parties, namely Robins's directors, Robins's attorneys, Aetna Casualty and Insurance Company (Robins's products liability insurer), and Aetna's attorneys. *Mabey*, 880 F.2d at 701. The Fourth Circuit held that the injunction was within the court's equitable powers under section 105, *id.* at 701–02, and was not prohibited by section 524(e). *Id.* at 702. The court expressly limited its holding to the unusual facts before it: (1) the reorganization plan, which included the injunction, was approved by over 94% of the claimants, *id.* at 698, 702; (2) the plan provided for full payment of creditors' claims, *id.* at 701; (3) the injunction affected only about 1.5% of the claimants, *id.* at 700–01 & n. 7; (4) it was "essential" to the plan that claimants "either resort to the source of funds for them in the Plan . . . or not be permitted to interfere with the reorganization and thus with all other creditors," *id.* at 701; and (5) "the entire reorganization hing[ed] on the debtor being free from indirect claims such as suits against parties who would have indemnity or contribution claims against the debtor." *Id.* at 702.

American's bankruptcy proceeding presents no such unusual facts. Its reorganization did not contemplate the balancing of some 195,000 tort claimants alleging injuries. totaling approximately $2.457 billion, *id.* at 698; the permanent injunction sought by American was not overwhelmingly approved by creditors; the injunctions would affect American's most significant creditor, not merely 1.5% of its creditors; and American does not argue, nor did the district court find, that the permanent injunction is "essential to the plan" or that the entire reorganization "hinged" on it.

We hold that the district court did not err in concluding that it lacked power to enjoin Deutsche permanently from enforcing its state court judgment against the Keelers.

AFFIRMED.