## In re MARLEY ORCHARDS INCOME FUND I, LIMITED PARTNERSHIP, Debtor.

## MARLEY ORCHARDS INCOME FUND I, LIMITED PARTNERSHIP, Plaintiff,

v.

## Rex M. WALKER and Ruth L. Walker, husband and wife, Defendants.

**Bankruptcy No. 90–00841–R31.**

**Adv. No. A90–0139–R31.**

United States Bankruptcy Court, E.D. Washington.

Oct. 17, 1990.

---

Bruce Johnston, Lane Powell Moss & Miller, Seattle, Wash., for Marley Orchards, debtor/plaintiff.

Steven Eugster, Spokane, Wash., for Walker, defendants.

## MEMORANDUM DECISION

L. WARDEN HANEL, Bankruptcy Judge.

This matter came on for hearing on Marley Orchards Income Fund I Limited Partnership's motion for an order granting a preliminary injunction enjoining defendants, Rex M. Walker and Ruth L. Walker, from continuing prosecution of an action pending in Superior Court for Franklin County, Washington against Marley Orchards Corporation and William J. Gammie.

Marley Orchards Income Fund I (hereinafter referred to as MOIF), a limited partnership whose general partners are William J. Gammie and Marley Orchards Corporation (hereinafter referred to as MOC), operates, grows and harvests several apple orchards in Yakima, Benton and Franklin Counties. The total acreage of these orchards is approximately 1469 tree count acres.

On April 18, 1986, MOIF entered into a real estate contract as purchasers with Rex M. Walker and Ruth L. Walker as sellers for purchase of the Cougar Ranch, comprising of 178 acres in Franklin County. The purchase price was $2,467,000, of which One Million Dollars was paid down. The balance owing on said contract is $950,000. The property has been appraised by an MAI appraiser at $1,400,000 to $1,500,000, which valuation at this time is not disputed.

In March, 1990 MOIF filed a chapter 11 petition for relief with this Court.

MOIF is in default under the said contract not having paid the semi-annual installment of $123,411.36 which fell due on April 9, 1990.

Gammie and MOC signed the contract of sale as general partners but did not separately guarantee payment of the purchase price.

Walker instituted suit in Franklin County naming Gammie and MOC as co-defendants seeking judgment for the April 9, 1990 semi-annual payment. The suit seeks judgment against the general partners on the MOIF obligation.

This application for a preliminary injunction is requested under section 11 U.S.C. § 105(a) and the Court is also requested to determine that the automatic stay is effective under provision of 11 U.S.C. § 362(a)(3).

The Court will first review the request to determine if the automatic stay is

effective as to Walkers' suit in Franklin County. The basic contention of the debtor is that MOIF holds a chose in action against the general partners, which constitutes property of the Chapter 11 estate. The pending action is directed at the property of the general partners, which constitutes an attempt by Walker to subject the estates of Gammie and MOC to a partnership debt in that it disturbs the order of priorities of claims against the partners' separate property.

The Court has read with interest the supplemental brief of MOIF in outlining its theory that the suit by Walkers is a violation of the automatic stay under section 362(a)(3).

At this point I believe the language of debtor's brief at page 7, line 5 is particularly applicable at this stage of the proceedings in the MOIF chapter 11 wherein it is stated:

"In some cases, it will be so obvious that no deficiency would need to be sought from the General Partners that it would not be a violation of the automatic stay for the partnership creditor to proceed against General Partners individually. However, where the court envisions a scenario where a deficiency is possible due to potential liquidation, or otherwise, the court should uphold that property interest of the estate and protect it through the use of the automatic stay."

At this point in the administration of the Chapter 11 the Court is unwilling to envision a scenario where a deficiency is possible due to potential liquidation. It is possible that sometime downstream the Court may be faced with liquidation of MOIF and the existence of deficiencies and at that point it might well be the automatic stay would be determined to be operative. At present the Court is reluctant to anticipate this scenario and therefore determines the automatic stay does not extend to Walkers' suit against the general partners.

Turning next to the question of the issuance of a preliminary injunction. As the debtor points out the "Walkers are attempting to collect money from Gammie and MOC which is money owing by MOIF

under its contract with Walkers." It is further pointed out that Walkers are oversecured in the obligation owing by MOIF to Walkers. The obligation balance being $950,000 and the value of the property securing the obligation having an undisputed value of $1,400,000 to $1,500,000.

It further appears that MOIF grows and harvests varieties of apples in several orchards in Yakima, Benton and Franklin Counties and that MOIF Orchards constitutes one of the larger apple growing operations in the State of Washington. Additionally, the partnership operation is further enhanced by its association with Gammie, MOC and Jack Frost Fruit Co. as these units supply essential functions of aid in the growing, harvesting, packing, shipping and sale of the apple crops.

■ There are four basic grounds for issuing an injunction under section 105(a). They are: (1) irreparable harm to the estate, (2) likelihood of success on the merits, (3) threatened injury to the movant outweighs threatened harm to other party, and (4) issuance of the injunction is in the public interest. The Court must determine if the debtor has established the existence of circumstances falling within the basic grounds.

■ First: Irreparable Harm to the Estate. It has been shown that pursuant to a service agreement between MOIF and Gammie and MOC, they, Gammie, MOC and Jack Frost Fruit Co., provide numerous services to MOIF, which contribute to a vertically integrated fruit marketing operation. Those services are:

### STORAGE

This year envisions approximately 40,000 bins of apples. The sole source of storage available to MOIF are warehouses of MOC and Jack Frost Fruit Co., an entity of Gammie. For this quantity of apples no other storage facility is available in the Yakima area.

### PACKING

Service is provided by MOC and Jack Frost Fruit and is provided at a reduced charge under the service agreement.

## MARKETING

Marketing is carried on by Gammie and the staff of MOC and Jack Frost Fruit.

## LABEL USAGE

A well established market exists under labels owned by Jack Frost Fruit and MOC which labels are utilized for MOIF apples to gain a better price within a more extensive and established market.

## FACILITY SUPPLY

MOC provides office space to MOIF at no additional charge.

## ADVANCES AND FINANCING

The packer-shipper functions which are extended by MOC and Jack Frost Fruit provide advances of funding necessary to bring apples to the market place.

## EQUIPMENT

Equipment is furnished in the operations of MOIF by MOC and Jack Frost Fruit which includes tractors, sprayers, wind machines and other miscellaneous farm machinery.

## EMPLOYEE AVAILABILITY

MOC and Jack Frost Fruit cooperate with MOIF in supplying workers for a joint working relationship. Lack of this joint employment pool could seriously harm MOIF's structure financially as well as in an undisturbed management format.

Availability of another packer to market and ship apples is not available in the area for a production as large as the anticipated 1990 crop.

Gammie's affidavit indicates that along with MOC and Jack Frost Fruit he is the sole source of funding MOIF's Chapter 11 reorganization.

It is shown financing for the 1990 crop has been provided by Prudential and First Interstate Bank and is fully in place. The packing and marketing expenses must be provided under the service agreement by Gammie, MOC and Jack Frost Fruit. The line of credit to these organizations is provided by First Interstate Bank which has been fully utilized and consequently no further financing is available.

If judgment is taken on Walkers' suit in State Court, conceivably Gammie and MOC will be forced to liquidate portions of their operational properties to satisfy that judgment. Unalterably jeopardizing the marketing of the 1990 crop which in turn jeopardizes the Chapter 11 reorganization of MOIF and further renders financing of the reorganization by Gammie and MOC doubtful if not impossible.

The affidavit of Gammie shows that he, along with the corporations he heads, such as MOC, are the sole source of funding the MOIF reorganization.

I am satisfied these conditions and circumstances constitute irreparable harm to the debtor, MOIF.

Second: Likelihood of Success on the Merits. It is necessary that MOIF show a reasonable probability of success on the merits as is pointed out in *In re North-lake Building Partners,* 41 B.R. 231 (Bkrtcy.N. D.Ill.1984). This requirement relates to the prospects for a successful reorganization.

If there be uncertainty, that uncertainty should be resolved in the debtor's favor at this early stage in the Chapter 11 proceedings.

With the prospect of a large 1990 crop together with favorable marketing conditions the Court at this point is inclined to view the Chapter 11 as having fair prospects for successful reorganization. It appears it will likely succeed on the merits.

Third: Threatened Injury to the Movant Outweighs the Threatened Harm to the Other Parties. It appears at this point if the Walkers are not enjoined from continuing their State Court action it will likely destroy this year's successful marketing of the 1990 crop, resulting in the disruption of the vertical integrated marketing operation of MOIF–Gammie–MOC–Jack Frost Fruit. As a consequence disrupting and likely destroying Gammie and MOC's ability to fund the Chapter 11 reorganization.

Balanced against this potential terminal destruction of the Chapter 11 reorganiza-

tion is Walkers' position as a secured creditor of MOIF. Walkers' claim is fully protected as at this point they are over-secured with an equity cushion of $450,000 to $550,000. If the property is sold Walkers will be paid off out of the proceeds. If the property is retained through a plan of reorganization the Walkers' obligation will have to be paid in full. The harm to the Walkers at this point is only deferment of receipt of a semi-annual payment. Certainly issuance of an injunction appears warranted as the threatened injury to MOIF dramatically outweighs any harm to the Walkers.

Fourth: Issuance of the Injunction is in the Public Interest. The Court is of the opinion the public interest is served by issuance of the injunction for it affords the debtor its continued opportunity to reorganize under the provisions of Chapter 11 which permits a large and extensive orchard operation to continue to function in the Yakima, Benton, and Franklin County area. It avoids throwing over 400 workers out of gainful employment within said counties. Continued efforts by the debtor to effect a successful reorganization are beneficial to the community at large without jeopardy to Walkers' secured position in the debtor's assets.

As pointed out by debtor the public interest in reorganization clearly outweighs any competing interest in allowing continuance of the suit against the general partners of the limited partnership. I am satisfied this Court has jurisdiction and power to issue the injunction pursuant to 11 U.S.C. § 105(a). The Ninth Circuit has recognized the Court's power to issue preliminary injunction under Sec. 105(a) in *In re American Hardwoods*, 885 F.2d 621 (1989), recognizing it is appropriate and necessary to enjoin action against non-debtors in order to protect and carry out reorganization of a debtor. Observing the Court's reasoning in *In re Monroe Well Service, Inc.*, 67 B.R. 746 (Bkrtcy.E.D.Pa.1986), an injunction may be appropriate when the non-debtor owns assets which will either be a source of funds for the debtor or when the preservation of the non-debtor credit standing will play a significant role in the debtor's attempt to reorganize.

The Court concludes that a preliminary injunction should issue enjoining the Walkers from proceeding in their Superior Court suit against Gammie and MOC in Franklin County, State of Washington. The preliminary injunction should continue in force until further order of this Court.