**In re REGATTA BAY, LLC, Debtor.**

**No. 2:08–bk–10838–RJH.**

United States Bankruptcy Court,
D. Arizona.

May 19, 2009.

David WM. Engelman, Engelman Berger, P.C., Phoenix, AZ, for debtor.

## OPINION AND ORDER DENYING STAY PENDING APPEAL

RANDOLPH J. HAINES, Bankruptcy Judge.

The creditors' motion for a stay pending appeal of the order confirming the Debtor's Plan of Reorganization hinges largely on the creditor's argument that Ninth Circuit case law prohibits a plan term that delays the creditor's collection of its debt from non-estate sources. Because the Court concludes Ninth Circuit law does not so hold and that such a plan term is permissible, the motion for stay pending appeal is denied.

### Factual and Procedural Background

The creditor, Coronado City Views, LLC, and the debtor, Regatta Bay, LLC, own competing specialized condominium developments on Coronado Island, off the coast of San Diego. They were under construction at approximately the same time, and are both offering units for sale. Coronado sued the debtor and its two owners, John Wright and Phillip Keesling, alleging them to have been somehow responsible for delays in completion of the Coronado condominium complex. Coronado obtained a $6 million jury verdict, which the debtor appealed but did not stay pending appeal. This bankruptcy case followed.

The debtor confirmed a plan of reorganization that provides for payment in full of all of its creditors. In particular, the first

mortgage on the condominium project shall be paid in full, together with interest at the non-default contract rate, within a year and a half after the confirmation of the plan from the net proceeds of all condominium sales. After the first mortgage is paid in full, all net proceeds from condominium sales shall be devoted to a reserve fund for the payment of the claim of creditor, Coronado City Views. Its debt shall be paid in full, together with interest at the California statutory rate, upon the resolution of the pending appeal or two and one-half years after confirmation. After creditor Coronado City Views has been paid, net proceeds shall be devoted to the payment of mechanics and materialmens liens and then payment of unsecured creditors.

The debtor's plan also provides that Wright and Keesling shall contribute a total of $400,000.00 to the debtor for the payment of operating expenses and professional fees.

The plan also provides that creditor Coronado City Views is enjoined from attempting to collect its claim from Wright or Keesling or any of their property until the earlier of (a) all required plan payments have been made, or (b) the bankruptcy case is dismissed or converted to chapter 7; or (c) when there is a default under the plan that is not cured within ten days.

Finally, the order confirming the plan also provides that Wright and Keesling are enjoined from transferring or encumbering any of their assets out of the ordinary course of business except as may be approved by the Bankruptcy Court after notice and opportunity for creditor Coronado City Views to object.

Creditor Coronado City Views appealed the confirmation order to the District Court and then moved in the Bankruptcy Court for a stay pending appeal.

**Standards for Stay Pending Appeal**

■ The Ninth Circuit employs a sliding scale for a stay pending appeal, which should be granted when the appellant demonstrates either (1) "a strong likelihood of success on the merits" and "the possibility of irreparable injury," or (2) "serious legal questions are raised and that the balance of hardships tips sharply in its favor."[1] Here, the creditor primarily bases its motion on its likelihood of success on appeal, contending that the "Ninth Circuit has adopted a *per se* rule against post-confirmation injunctions against non-debtors." In addition, the creditor argues it will be irreparably harmed because other creditors could levy against the assets of Wright and Keesling.

**No Ninth Circuit Authority Bars Plan Terms that Delay Enforcement of Judgments**

The creditor relies on three Ninth Circuit cases for the proposition that Bankruptcy Code § 524(e)[2] limits the authority of bankruptcy courts, under Bankruptcy Code § 105[3], to enjoin the collection of a debt from a non-debtor. While that may

---

1. *Lopez v. Heckler,* 713 F.2d 1432 (9th Cir. 1983), *rev'd on other grounds,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984).

2. Bankruptcy Code § 524(e) provides: "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." Except as otherwise noted, all section

and code references are to the United States Bankruptcy Code, 11 U.S.C. §§ 101–1532.

3. Bankruptcy Code § 105(a) provides, in pertinent part: "The court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

be an accurate summary of the holdings of those cases, none of those holdings is on point with the factual and legal circumstances present here, nor does any of them hold that a bankruptcy court cannot confirm a plan that delays enforcement of creditors' judgments.

What is at issue here is the confirmation of a plan that contains a provision that delays the enforcement of the creditor's judgment against the individuals Wright and Keesling. The injunctive effect of that plan provision comes not from a bankruptcy court injunction issued under Code § 105, but rather from the statutory language of Code § 1141(a) "the provisions of a confirmed plan bind ... any creditor." Although in this case there is also injunctive language contained in the court's order confirming the plan, its effect is only to recite the binding effect of the plan term pursuant to Code § 1141(a). Thus if the plan was properly confirmed, there is no issue regarding the court's ability to issue an injunction pursuant to Code § 105. The injunctive effect flows from the statute itself. Thus the only real issue here is whether a plan containing such a term is confirmable.

The issue of whether a confirmable plan may contain a term delaying a creditor's enforcement of a judgment against a nondebtor is not addressed by any of the cases on which the creditor relies to demonstrate the likelihood of success on appeal of the confirmation order.

The creditor's principal case, *American Hardwoods*,[4] did not address the confirmability of a plan containing a provision delaying a creditor's enforcement of a judgment against non-debtors and, indeed, did not address any confirmation issue. *American Hardwoods* dealt with an injunction granted, apparently under the authority of § 105, early in a bankruptcy case before any plan of reorganization had ever been filed, much less confirmed. Neither the holding in that case nor any dictum in the opinion has any bearing on the confirmability of plans. The opinion focused solely on the kinds of injunctions bankruptcy courts could issue under § 105 and not on the authority of bankruptcy courts to confirm plans pursuant to Code § 1129. Nor did it discuss what provisions might be contained in a confirmable plan.

More significantly, the specific issue raised by the **debtor's** appeal in *American Hardwoods* was the Bankruptcy Court's authority to issue a *permanent* injunction under § 105. The Ninth Circuit concluded the Bankruptcy Court was powerless to issue such an injunction because "[t]he permanent injunction requested by American falls squarely within the definition of a discharge under section 524(a)(2)."[5] It was on that basis that the Ninth Circuit "conclude[d] that the specific provisions of section 524 displace the court's equitable powers under section 105 to order the *permanent* relief sought by American."[6] Thus both the holding and the rationale of *American Hardwoods* were limited to the power of courts to permanently prohibit enforcement under § 105, and therefore have no bearing on temporally limited delays in enforcement that might be contained in otherwise confirmable plans of reorganization.

The creditor also relies on the Ninth Circuit opinion in *Lowenschuss*.[7] Al-

---

4. *Am. Hardwoods, Inc., v. Deutsche Credit Corp (In re American Hardwoods)*, 885 F.2d 621 (9th Cir.1989).

5. *Id.* at 626.

6. *Id.* (emphasis added).

7. *Resorts Int'l, Inc. v. Lowenschuss (In re Lowenschuss)*, 67 F.3d 1394 (9th Cir.1995).

though *Lowenschuss* did deal with a plan term rather than a § 105 injunction, the plan term at issue was not a temporary delay of a creditor's judgment collection rights but rather a "global release" of third parties' liability.[8] Relying on the rationale of *American Hardwoods*, the Ninth Circuit in *Lowenschuss* concluded that a global release of third party liability is effectively identical to a third party discharge that is barred by § 524(e). Neither the rationale nor the holding of *Lowenschuss*, however, has any bearing on a temporary delay of a creditor's right to enforce a judgment against third parties. The *Lowenschuss* analysis was soundly based on the prior Ninth Circuit holding in *Underhill*[9] that also dealt with a plan "release"[10] and its analysis that similarly had no bearing on a temporary deferment of creditor's enforcement rights.

In addition to those Ninth Circuit cases, none of which is on point, the creditor relies on some decisions of the Bankruptcy Appellate Panel. Although at least one of those cases did address a plan term for a temporary (five year) stay of creditor enforcement actions against co-debtors, there was no showing made that the co-debtors would contribute to the plan or that their contributions were essential to the success of the plan.[11] It considered only the court's injunctive powers under § 105 and never considered the statutory injunctive

effect of § 1141(a). More importantly, because that holding of the Bankruptcy Appellate Panel has no precedential effect on the District Court where this creditor's appeal presently pends, it has little to no bearing on the likelihood of success of the creditor's appeal to the District Court.

### Delay in Enforcement Does Not Equate to Denial of Rights

■ The plan term at issue here merely delays the creditor's enforcement of its rights against Wright and Keesling until the earlier of full consummation of the plan (including full payment of the creditor, with interest) or a default under the plan or dismissal or conversion of the case. For the creditor's argument based on *American Hardwoods* and *Lowenschuss* to have any merit, the essential (but unstated) step in the creditor's argument is to equate that temporary delay in enforcement to either a discharge or a release, *i.e.*, to a complete denial of the creditor's rights against Wright and Keesling. But it has long been fundamental, not only to bankruptcy law but also to constitutional law and even the structure of our judiciary, that a mere delay in the enforceability of creditors' remedies is not equivalent to a denial or a "taking" of their rights.

In *Wright*, the Supreme Court unanimously upheld the constitutionality of the

---

8. "Global releases will be given to Debtor, Debtor's children ... Fred Lowenschuss Associates, a professional corporation, Fred Lowenschuss Associates Pension Plan, as well as releasing of all liens against all trusts, custodian accounts, pension plan, Fred Lowenschuss Associates and satisfying of all outstanding judgments, executions, and levies against the aforementioned or any person or entity connected with them." *Id.* at 1401 (quoting from the Lowenschuss Reorganization Plan).

9. *Underhill v. Royal,* 769 F.2d 1426, 1432 (9th Cir.1985).

10. Royal's plan contained a "release from the participants in the loan agreement plan of all claims against the debtor, 'any affiliate of the Debtor, and any insider of the debtor.' " *Id.* at 1430.

11. *Seaport Auto. Warehouse, Inc. v. Rohnert Park Auto Parts, Inc. (In re Rohnert Park Auto Parts, Inc.),* 113 B.R. 610, 614–617 (9th Cir. BAP1990).

second Frazier–Lemke Act.[12] The Court there concluded that a three-year moratorium on mortgagees' rights to foreclose was neither a denial nor a taking of their lien rights in violation of the Fifth Amendment. Since it was uncontroverted that three of a lien holder's five rights remained intact, the argument for a taking of lien rights "rests mainly upon the contention that the Act denies to a mortgagee the 'right to determine when such sale shall be held'" by imposing an "absolute right to a three-year stay."[13] The Court held that temporary delay not to constitute a taking primarily because it was not absolute but would be terminated at any time if "the debtor should fail to comply with orders of the court issued under its power to require interim payments" or if "the debtor at any time ... is unable to refinance himself within three years."[14] The deferral in the debtor's plan here exactly mirrors those limitations because it is terminable if the debtor fails to fund the reserve, is unable to satisfy the debt in two and a half years or otherwise defaults under its plan.

In holding that a three-year stay was not a taking or denial of lienholders' rights the Court effectively reversed its previous conclusion that a five year stay under the first Frazier–Lemke Act did constitute such an unconstitutional taking.[15] And not only was the *Wright* case fundamental to the constitutionality of depression-era and all subsequent bankruptcy laws, but also to the very structure of our government. It was the *Wright* correction that effectively

ended President Roosevelt's ill-fated and ill-conceived Court-packing plan.

It has now been the law for more than 70 years that a three-year delay in enforcement of secured creditors' rights is not equivalent to a denial of those rights. There therefore can be no basis to equate the plan's two and one-half year delay of a creditor's unsecured collection rights with either their release or their discharge, as were involved in *Lowenschuss* and *American Hardwoods*. Nor, indeed, can such a two and one-half year delay be equated to the discharge that is limited by Bankruptcy Code § 524(e).

### The Plan Term is Fair and Equitable

Because *Wright* conclusively holds that a deferment of creditor collection rights is not equivalent to their denial, the plan term at issue here is not governed by § 524(e) or the Ninth Circuit holdings in *American Hardwoods* or *Lowenschuss*. In attempting to demonstrate its likelihood of success on appeal, the creditor identifies no other provision of the Bankruptcy Code that prohibits such a plan term. Its failure even to identify any such applicable authority is itself sufficient basis to conclude it does not have such a substantial likelihood of success on appeal to merit a stay pending appeal.

■ The only other Code provision potentially applicable is Bankruptcy Code § 1129(b)(1). Because the creditor caused Class 4 to reject the plan, it was confirma-

---

**12.** *Wright v. Vinton Branch of the Mountain Trust Bank,* 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937).

**13.** *Id.* at 460, 57 S.Ct. 556.

**14.** *Id.* at 462, 57 S.Ct. 556.

**15.** *Louisville Joint Stock Land Bank v. Radford,* 295 U.S. 555, 594, 55 S.Ct. 854, 79 L.Ed. 1593 (1935)("as here applied [the first Frazi-

er–Lemke Act] has taken from the Bank the following property rights ...: (3) the right to determine when such sale shall be held, subject only to the discretion of the court"). The difference between three and five years was not the significant distinction because the Court subsequently noted that the *Wright* holding was effectively a reversal of the Court's previous mistake in *Radford*. *Helvering v. Griffiths,* 318 U.S. 371, 401 n. 52, 63 S.Ct. 636, 87 L.Ed. 843 (1943) (dictum).

ble, if at all, only under § 1129(b)(1), which requires that the plan be "fair and equitable." The question therefore becomes whether, on appeal, the creditor is likely to demonstrate that the disputed plan term is not "fair and equitable."

The evidence established, and the Court found as a fact, both that Wright and Keesling would contribute $400,000.00 to the debtor in order to effectuate the plan, and that such a contribution was essential to the success of the plan. The evidence also demonstrated, and the Court found as a fact, that the creditor's enforcement of its judgment against Wright and Keesling would impair their ability to make those contributions to the debtor. Finally, the facts also established that if the plan were not successful because Wright and Keesling could not make those contributions, there would likely be no return to the unsecured creditors in this case. The secured creditors' liens would exhaust all of the assets of the estate, so the unsecured creditors would receive nothing, instead of the full payment that is promised by the plan.

In effect, then, the plan term that delays the creditor's enforcement of its rights against Wright and Keesling is akin to a marshaling order. It permits both Coronado City Views and the unsecured creditors to be paid in full, whereas the alternative of allowing Coronado City Views both the election and the timing of its remedies would have permitted the payment of only Coronado City Views.

■ As a court of equity, Bankruptcy Court has authority to issue a marshaling order when it permits a greater recovery for all creditors without causing harm to any creditor. The Supreme Court has recognized the equitable power of bankruptcy courts to marshal liens: "A court of bankruptcy may affect the interests of lienholders in many ways. To carry out the purposes of the Bankruptcy Act, it may direct that all liens upon property forming part of a bankrupt's estate be marshaled...." [16] And the Ninth Circuit has long recognized that the equitable doctrine of marshaling applies in bankruptcy cases, so long as it causes no injury to any creditors.[17]

It could be argued that marshaling is not technically applicable because there are not presently two funds of the debtor, since the Wright and Keesling contributions will not become property of the estate unless the plan is confirmed and implemented. But the equitable rationale is the same, because the creditors of the estate will not be able to be paid at all if Coronado City Views is able to intercept the Wright and Keesling contributions before they become property of the estate. This equitable authority and basis for the marshaling concept has long been recognized. As Justice Storey described it over 120 years ago

> The reason is obvious, and has already been stated; for by compelling A, under such circumstances, to take satisfaction out of one of the funds, no injustice is done to him in point of security or payment. But it is the only way by which B can receive payment. And natural justice requires that one man should not be permitted, from wantonness, or caprice, or rashness, to do an injury to another.[18]

16. *Wright, supra,* note 12, at 470.

17. *In re Forester,* 529 F.2d 310 (9th Cir.1976). Cf. *Owens–Corning Fiberglas Corp v. Ctr. Wholesale, Inc. (In re Ctr. Wholesale, Inc.),* 759 F.2d 1440, 1447 (9th Cir.1985) (marshaling denied not because bankruptcy court lacked power but because it "would be inappropriate and prejudice the estate").

18. 2 Joseph Story, COMMENTARIES ON EQUITY JURISPRUDENCE AS ADMINISTERED IN ENGLAND AND

■ The equitable principle of marshaling effectively means that a plan term such as that at issue here is "fair and equitable" so long as it improves the likelihood of recovery by unsecured creditors and causes no injury to any creditor. The bankruptcy court also has equitable power to deny a veto power to a creditor, like Coronado City Views, whose "purpose [is] to destroy an enterprise in order to advance the interests of a competing business." [19] Because the plan term is therefore permitted by § 1129(b)(1) and not prohibited or prescribed by any other provision of the Code or Ninth Circuit case law, this Court cannot conclude that the creditor here has a substantial likelihood of success on its appeal of the confirmation order.

It is for reasons such as these that this court also concludes that when presented with an appropriate case and record, the Ninth Circuit will join the majority of other circuits that have addressed the question and uphold confirmation of a plan that temporarily defers creditors' collection rights against affiliates whose contributions to the plan are essential to maximize its success and return to unsecured creditors.[20]

### There is no Substantial Likelihood of Irreparable Harm

■ In confirming the plan, the Bankruptcy Court required additional orders to preclude the possibility of harm to Coronado City Views as a result of the temporary deferment of its collection rights against Wright and Keesling. This is the origin of the provisions of the order confirming the

plan that precludes Wright and Keesling from selling, transferring or encumbering their assets out of the ordinary course of business, at least without advance notice to Coronado City Views and approval by the Bankruptcy Court. This term was designed to respond to Coronado City Views' argument that it would be harmed by the delay in its ability to effect collection against Wright and Keesling.

Coronado City Views did not argue to the Bankruptcy Court that it saw a likelihood of harm because other creditors of Wright and Keesling may engage in collection efforts and seize assets while Coronado City Views was prohibited from doing so. If it had so argued, the Court would have considered broadening the order confirming the plan to avoid such a possibility. But it was not raised, probably because the theory of the case espoused by Coronado City Views was always that Wright and Keesling are wealthy and, indeed, could have posted a bond for a stay pending appeal of the California jury verdict. There has been no suggestion in the record that they face any likely creditor collection efforts other than Coronado City Views'.

It is therefore doubtful whether an appellate court will accept this argument, raised for the first time on appeal, that Coronado City Views will be irreparably harmed by the likely actions of other creditors of Wright and Keesling. And in any event there no factual basis in the record to support that argument. A likelihood of

America, 633 at 640–41 (Beard Books 2000)(1886).

**19.** *Figter Ltd. v. Teachers Ins. and Ann. Assoc. of Am. (In re Figter Ltd.),* 118 F.3d 635, 639 (9th Cir.1997), quoting *In re Pine Hill Collieries Co.,* 46 F.Supp. 669, 671 (E.D.Pa.1942).

**20.** *E.g., In re Dow Corning Corp.,* 280 F.3d 648 (6th Cir.2002); *SEC v. Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2d Cir. 1992); *In re A.H. Robins Co.* 880 F.2d 694 (4th Cir.1989); *but see Landsing Diversified Props. II v. First Nat'l Bank and Trust (In re W. Real Estate Fund, Inc.),* 922 F.2d 592 (10th Cir.1990).

irreparable harm cannot be based on mere speculation.

Similarly, there has been no demonstration of harm potentially caused by some conduct of the debtor in implementing the plan that might equitably moot the appeal. Although it was suggested at oral argument, the creditor made no such argument in its motion for a stay pending appeal. And at oral argument it could not identify any such likely action that would effectively moot the appeal.

Based on the record, this Court concludes there is no substantial likelihood of irreparable injury to Coronado City Views arising from the possibility of other creditor action against Wright and Keesling.

■ On the other hand, the record does establish the likelihood of irreparable injury to the creditors of the estate if a stay were granted. A stay would permit Coronado City Views to enforce its judgment against Wright and Keesling, which would likely impair their ability to contribute to the plan and ensure its success. And that judgment enforcement action could be completed long before Coronado's appeal is resolved. Consequently the very same record that established the need and propriety of the plan term delaying the creditor's enforcement rights similarly established the likelihood of irreparable harm to the estate if a stay pending appeal were granted.

### Conclusion

The Court therefore finds and concludes that Coronado City Views does not have either a strong likelihood of success on the merits of its appeal, or any likelihood of irreparable injury. By contrast, however, a stay pending appeal would effectively allow Coronado City Views to seize the assets of Wright and Keesling and render them incapable of making the necessary contributions to the debtor and the success of its plan. That would cause undue hardship to the secured creditors of the estate, who would likely get no recovery. The Court therefore also concludes that the balance of hardships does not tip strongly in favor of Coronado City Views, but rather tips sharply in favor of the unsecured creditors of this estate.

For these reasons, the motion for stay pending appeal is denied.