**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: EXCEL INNOVATIONS, INC.,
                    *Debtor,*

SOLIDUS NETWORKS, INC.; INDIVOS
CORPORATION,
                    *Appellants,*

                v.

EXCEL INNOVATIONS, INC.; NED
HOFFMAN,
                    *Appellees.*

No. 06-17288

BAP No.
NC-05-01510-
MaSAl

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Alley, Smith, and Marlar, Bankruptcy Judges, Presiding

Argued and Submitted
June 11, 2007—San Francisco, California

Filed September 7, 2007

Before: Alfred T. Goodwin, Jay S. Bybee, and
Milan D. Smith, Circuit Judges.

Opinion by Senior Circuit Judge Goodwin

**COUNSEL**

Kristen A. Palumbo, Alfred C. Pfeiffer, Jr., Bingham McCutchen LLP, San Francisco, California, for the appellants.

Scott L. Goodsell, Campeau Goodsell Smith, San Jose, California, for appellee Excel Innovations; John T. Hansen, Nossaman, Guthner, Knox & Elliott, San Francisco, California, for appellee Hoffman.

**OPINION**

GOODWIN, Senior Circuit Judge:

Debtor Excel Innovations, Inc. ("Excel") applied for a preliminary injunction staying arbitration proceedings between two non-bankrupt parties, Indivos Corporation ("Indivos") and former Excel CEO Ned Hoffman ("Hoffman"). The bankruptcy court granted the injunction, finding a reasonable probability that the arbitration could conceivably affect the debtor and the bankruptcy estate. The Bankruptcy Appellate Panel ("BAP") affirmed. The present appeal followed.

We hold that when a debtor applies for a 11 U.S.C. § 105(a) preliminary injunction to stay a proceeding in which the debtor is not a party, the bankruptcy court must balance the debtor's likelihood of success in reorganization against the relative hardship of the parties, as well as consider the public interest if warranted. Because the bankruptcy court misapprehended the operative legal standard, we reverse and remand for further proceedings.

## I.  BACKGROUND

Hoffman is the founder and a major shareholder of both Indivos and Excel. In 2000, Hoffman entered into a series of agreements ("Settlement Contracts") with Indivos. These included the Settlement Agreement and General Release, the Voting Trust and Standstill Agreement, the Pledge Agreement, and the Proprietary Information and Inventions Agreement. One of the main purposes of these agreements was to separate Hoffman from the management of Indivos. Excel, which was controlled by Hoffman and separately owned Indivos shares, was not a party to the Settlement Agreement or the Pledge Agreement. However, Excel was a party to the Voting Trust and Standstill Agreement, which required Hoffman and Excel to place their Indivos shares in a voting trust as collateral for their obligations under the Settlement Con-

tracts. Section 9(a) of the Voting Trust and Standstill Agreement, which applied to Hoffman only, prohibited him from "individually or with others, directly or indirectly," taking any action to "control, disrupt, or unduly influence the management or policies of [Indivos]." The parties agreed to submit any dispute arising from the Settlement Contracts to binding arbitration with the American Arbitration Association ("AAA").

In June 2003, Indivos initiated AAA arbitration proceedings against Hoffman and Excel. Indivos alleged that Hoffman and Excel attempted to disrupt a merger between Indivos and Solidus Networks, Inc. ("Solidus") by, inter alia, filing multiple shareholder derivative actions, initiating a proxy contest, and attempting to gain a seat on the Indivos board. Indivos also alleged that Excel and Hoffman filed a patent infringement action against Indivos in the Northern District of California in violation of the Proprietary Information and Inventions Agreement. Indivos claimed that it, not Excel, owned the patents at issue. Indivos pled seven claims for relief, including breach of the Settlement Contracts, unfair business practices, and breach of fiduciary duty by Hoffman. Indivos also sought to hold Excel liable as Hoffman's alter ego.

On May 14, 2004, the arbitrator granted partial summary judgment for Indivos, finding Hoffman liable for breach of contract because he filed lawsuits to disrupt the merger, urged shareholders to vote against the merger, and tried to get on the Indivos board. The arbitrator found Excel liable as Hoffman's alter ego for some of the lawsuits Excel filed under Hoffman's direction, but denied summary judgment as to other lawsuits filed by Excel. The arbitrator further denied summary judgment with respect to merger-disrupting actions undertaken by two alleged surrogates of Hoffman. The arbitrator postponed any determination of the parties' patent rights, including whether their positions on patent ownership were taken in good faith, until resolution of the patent litiga-

tion in federal district court. The arbitrator also dismissed without prejudice Indivos' unfair business practices claim.[1] Less than a week later, the arbitrator began hearings on the remaining claims and damages.

In late May 2004, Excel and Hoffman suffered a significant setback in their patent infringement action against Indivos. Judge Chesney of the Northern District of California granted partial summary judgment for Indivos, ruling that all of the patents Excel accused Indivos of infringing were actually owned by Indivos.

In June 2004, Hoffman and Excel filed bankruptcy petitions under Chapter 13 and Chapter 11, respectively. The bankruptcy filings automatically stayed the arbitration against Hoffman and Excel, as well as the patent litigation. *See* 11 U.S.C. § 362(a). At that point in the arbitration, Indivos and Solidus had concluded their affirmative case, Hoffman and Excel had presented a substantial part of their defense, and the parties were attempting to schedule additional hearing dates to finish the proceeding. Hoffman's bankruptcy petition was dismissed in September 2004. In December 2004, Hoffman resigned as an officer and director of Excel.

In February 2005, Indivos recommenced arbitration against Hoffman, on the ground that the stay established by Hoffman's bankruptcy petition had been lifted. Hoffman argued to the arbitrator that the stay established by Excel's bankruptcy petition applied to Indivos' claims against him because those claims were intertwined with Indivos' claims against Excel. The arbitrator disagreed. The arbitrator stated that any claims

---

[1]The alleged unfair business practice was that Hoffman attempted to disrupt the merger by arguing to Indivos shareholders that Indivos was not getting a satisfactory price for its patents, but then suing Indivos on the ground that those same patents were owned by Excel. Indivos sought to condition the release of the merger proceeds for Indivos shares held by Excel and Hoffman on their cessation of the patent litigation.

that alleged direct or alter ego liability for Excel remained subject to the stay, but claims involving only Hoffman could proceed. The arbitrator did not schedule further evidentiary hearings and asked Hoffman and Indivos to submit closing briefs by July 29, 2005.

In July 2005, Excel initiated adversary proceedings in bankruptcy court against Indivos, Solidus, Hoffman, AAA, and the arbitrator. Excel sought declaratory and injunctive relief on the ground that the arbitration violated the automatic stay in Excel's bankruptcy case. According to Excel, Hoffman might argue that he acted as Excel's agent, leading to new liabilities for Excel and the bankruptcy estate. On the same day, Excel applied for a temporary restraining order ("TRO") to stop the arbitration. To reassure the court that the arbitration would not affect Excel, Indivos and Solidus stipulated that the arbitration would have no preclusive effect on Excel; that damages against Hoffman would not be offset against the Indivos shares Excel had pledged to the voting trust; and that to avoid privilege issues, no further evidence would be presented in the arbitration proceeding. The bankruptcy court denied the TRO on the basis of these representations.

Hoffman then wrote to AAA to request changes to the briefing schedule so he could present additional evidence. The arbitrator agreed. Hoffman immediately filed an ex parte application to reopen Excel's motion for a TRO and preliminary injunction. Counsel argued that, because the arbitrator now planned to take additional evidence, one of the bases for denying the injunction — Indivos' agreement not to present additional evidence — was no longer present. The bankruptcy court entered a TRO. The court expressed concern that information subject to Excel's attorney-client privilege could be revealed by Hoffman in the arbitration proceeding.

In September 2005, Excel filed a motion for a preliminary injunction. The motion was supported by an affidavit from Hoffman. He had served as Excel's CEO during the events

that gave rise to Indivos' claims, but at this time was only a consultant for Excel. In the affidavit, Hoffman offered three reasons why permitting arbitration against him would adversely impact Excel. First, he planned to demand indemnification from Excel on the ground that he was acting as an officer and agent of Excel when he challenged the Solidus-Indivos merger. Thus, arbitration could lead to new liabilities for Excel. Second, his defense would focus on his own interests and not those of Excel. Third, he would be "compelled to reveal the substance of critical privileged communications between myself and attorneys for the Debtor," because he acted "in accordance with legal advice from attorneys for the Debtor." He also intended to call Excel employees as witnesses.

The bankruptcy court granted an injunction staying arbitration until confirmation of Excel's reorganization plan. The court stated that a § 105(a) injunction is proper if arbitration "could conceivably have any effect on the administration of the bankruptcy estate." The court decided that Excel established a "reasonable probability" of possible negative impacts on the estate. Moreover, the court found that Excel's motion also satisfied the traditional, non-bankruptcy test for a preliminary injunction, which "balances the plaintiff's likelihood of success [on the merits] against the relative hardship to the parties." *See Clear Channel Outdoor Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003). The bankruptcy court made no findings on plaintiff's likelihood of success, but concluded that a stay would protect Excel from possible injury while causing no harm to Indivos and Solidus.

Indivos and Solidus appealed to the BAP, contending that the bankruptcy court applied the wrong legal standard to the motion for a preliminary injunction. The BAP affirmed. The BAP noted that the Ninth Circuit has not established a standard for a § 105(a) motion to enjoin an action against a non-debtor. Citing a series of Fourth Circuit opinions, the BAP stated that a § 105(a) injunction is appropriate when the

debtor and nondebtor's interests are so intertwined that an action against the nondebtor is in effect a claim against the debtor. *See, e.g.*, *A.H. Robins Co. v. Piccinin*, 788 F.2d 994 (4th Cir. 1986); *Oberg v. Aetna Cas. & Sur. Co.* (*In re A.H. Robins Co.*), 828 F.2d 1023 (4th Cir. 1987). The BAP concluded that "to the extent that § 105 is recognized as authority for granting injunctive relief in matters that are related to the bankruptcy case, we hold that the bankruptcy court correctly asserted its § 105(a) authority in enjoining Appellants' arbitration proceeding." Alternatively, the BAP found that Excel had also satisfied the traditional standard for a preliminary injunction. The BAP explained that Excel had shown likelihood of success on the merits because the reorganization plan had a "fair chance" of success. The BAP further noted that permitting arbitration to proceed would cause irreparable harm to Excel. Appellants filed a timely notice of appeal.

## II.    JURISDICTION

Although parties do not challenge our jurisdiction over this appeal, we have an independent obligation to inquire into the presence or absence of subject matter jurisdiction. *Moldo v. Ash* (*In re Thomas*), 428 F.3d 1266, 1268 (9th Cir. 2005). Under 28 U.S.C. § 158(d), we have jurisdiction to hear appeals from "final decisions" of the BAP. We look to the underlying bankruptcy court order reviewed by the BAP to determine whether the BAP decision is final. *Livesay v. W. Fin. Sav. Bank* (*In re Livesay*), 118 F.3d 661, 662 (9th Cir. 1997). "If the underlying bankruptcy court decision is interlocutory, the BAP order affirming or reversing it is also interlocutory." *Id.*

We hold that the injunction granted by the bankruptcy court constitutes an appealable final decision. The injunction is in effect an extension of the automatic stay, halting another proceeding to avoid disruption of the debtor's reorganization. We have held that a decision granting or denying relief from a § 362(a) automatic stay constitutes a final order for purposes

of appellate jurisdiction. *Crocker Nat'l Bank v. Am. Mariner Indus., Inc.* (*In re Am. Mariner Indus., Inc.*), 734 F.2d 426, 429 (9th Cir. 1984), *overruled on other grounds by United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365 (1988). We see no reason to treat the instant injunction differently. *See Gruntz v. County of Los Angeles* (*In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000) (en banc) ("The automatic stay is an injunction issuing from the authority of the bankruptcy court."). Moreover, although the parties and the bankruptcy court labeled the injunction "preliminary," nothing in the record indicates that the bankruptcy court contemplated further proceedings on the injunction. *See Shugrue v. Air Line Pilots Ass'n, Int'l* (*In re Ionosphere Clubs, Inc.*), 139 B.R. 772, 778 (S.D.N.Y. 1992) ("[W]here the bankruptcy court issues a 'preliminary' injunction, but contemplates no further hearings on the merits of the injunction, apart from the outcome of the reorganization, the injunction is a final, appealable order.").

## III.   STANDARD OF REVIEW

The decision of the BAP is reviewed de novo. *Contractors' State License Bd. of Cal. v. Dunbar* (*In re Dunbar*), 245 F.3d 1058, 1061 (9th Cir. 2001). "On appeal from the BAP, this court independently reviews bankruptcy courts' rulings." *Id.* The injunction will be reversed only if the bankruptcy court abused its discretion by basing its decision on an incorrect legal standard or on clearly erroneous findings of fact. *See id.*; *see also Ragsdale v. Haller*, 780 F.2d 794, 795 (9th Cir. 1986).

## IV.   DISCUSSION

### A.   *Preliminary Injunction Standard*

**[1]** Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Section

105(a) gives the bankruptcy courts the power to stay actions that are not subject to the 11 U.S.C. § 362(a) automatic stay[2] but "threaten the integrity of a bankrupt's estate." *Canter v. Canter* (*In re Canter*), 299 F.3d 1150, 1155 (9th Cir. 2002) (citation and quotation marks omitted); *Ingersoll-Rand Fin. Corp. v. Miller Mining Co.*, 817 F.2d 1424, 1427 (9th Cir. 1987). The proper standard for granting a § 105(a) preliminary injunction staying an action against a non-debtor is an issue of first impression in our circuit. Appellants argue that the bankruptcy court must apply the usual preliminary injunction standard. Excel disagrees, and claims that the movant need not show irreparable harm, only that the injunction would conform to the objectives of the Bankruptcy Code.

**[2]** In the non-bankruptcy context, we have consistently required trial courts deciding preliminary injunction motions to balance the moving party's likelihood of success on the merits and the relative hardship of the parties. The moving party must show:

> (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). Alternatively, a court may grant the injunction if the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of irreparable injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor.
>
> As we have said many times regarding the two alternative formulations of the preliminary injunc-

---

[2]The automatic stay applies to any "proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

> tion test: These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases. They are not separate tests but rather outer reaches of a single continuum.

*Save Our Sonoran, Inc. v. Flowers,* 408 F.3d 1113, 1120 (9th Cir. 2005) (citations and internal quotation marks omitted). We have applied this usual approach in reviewing a preliminary injunction issued by a bankruptcy court to prevent the debtor's shareholder from dissipating assets claimed by the estate. *Rubin v. Pringle* (*In re Focus Media Inc.*), 387 F.3d 1077, 1085-86 (9th Cir. 2004). However, in a case involving stay of a suit against a court-appointed bankruptcy trustee, we have also stated that "our usual preliminary injunction standard does not apply to injunctions issued by the bankruptcy court pursuant 11 U.S.C. § 105," and that "the court does not need to demonstrate an inadequate remedy at law or irreparable harm." *Beck v. Fort James Corp.* (*In re Crown Vantage, Inc.*), 421 F.3d 963, 975-76 (9th Cir. 2005).

**[3]** The majority of circuits that have reviewed injunctions staying actions against non-debtors have applied the usual preliminary injunction standard. *Am. Imaging Servs. v. Eagle-Picher Indus., Inc.* (*In re Eagle-Picher Indus., Inc.*), 963 F.2d 855, 858 (6th Cir. 1992); *Piccinin*, 788 F.2d at 1008 (4th Cir. 1986); *Commonwealth Oil Ref. Co. v. EPA* (*In re Commonwealth Oil Ref. Co.*), 805 F.2d 1175, 1188-89 (5th Cir. 1986). As the Fifth Circuit pointed out in *Commonwealth Oil*, the traditional approach is strongly supported by the legislative history of § 105(a). 805 F.2d at 1188-89. The relevant Senate report explained that § 105(a) grants bankruptcy courts "all the traditional injunctive powers of a court of equity." S. Rep. No. 95-989, at 51 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5837. "Stays or injunctions issued under these other sections will not be automatic upon the commencement of the case, but will be granted or issued under *the usual rules for the issuance of injunctions*." *Id.* (emphasis added). The Sec-

ond, Third, and Eighth Circuits have similarly applied the traditional standard with respect to stays that are not automatic under § 362(a). *See NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695, 699 n.3 (8th Cir. 1985) (staying NLRB regulatory proceeding against debtor); *Wedgewood Inv. Fund v. Wedgewood Realty Group, Ltd.* (*In re Wedgewood Realty Group, Ltd.*), 878 F.2d 693, 700-01 (3d Cir. 1989) (reimposing automatic stay); *Manville Corp. v. Equity Sec. Holders Comm.* (*In re Johns-Manville Corp.*), 801 F.2d 60, 68-69 (2d Cir. 1986) (reversing stay of shareholder action seeking to compel debtor to hold an annual meeting).

The Seventh Circuit, in contrast, has expressly held that the moving party need not show irreparable harm. *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998); *In re L&S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993).[3] The Seventh Circuit's approach rests upon the notion that "[w]hen the evidence shows that the defendants are engaged in . . . the act or practices prohibited by a statute which provides for injunctive relief to prevent such violations, irreparable harm to the plaintiffs need not be shown." *In re Chicago, Milwaukee, St. Paul and Pac. R.R.*, 738 F.2d 209, 213 (7th Cir. 1984). That proposition has its roots in *United States v. City and County of San Francisco*, 310 U.S. 16, 30-31 (1940), in which the Supreme Court affirmed an injunction against a municipality for violating the terms of a federal land grant. Ultimately, that decision turned on the Court's interpretation of congressional intent behind the land grant statute.

**[4]** We hold that the usual preliminary injunction standard applies to stays of proceedings against non-debtors under § 105(a). As the relevant House and Senate reports indicate, Congress intended that standard to apply to § 105(a) prelimi-

---

[3]The First Circuit has also stayed a non-debtor action without applying or discussing the usual preliminary injunction standard. *In re G.S.F. Corp.*, 938 F.2d 1467, 1474-76 (1st Cir. 1999), *overruled on other grounds by Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992).

nary injunctions. S. Rep. No. 95-989, at 51; H.R. Rep. No. 95-595, at 342 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6298. Moreover, we have consistently held that the automatic stay does not apply to suits against non-debtors. *See Chugach Timber Corp. v. N. Stevedoring & Handling Corp.* (*In re Chugach Forest Prods., Inc.*), 23 F.3d 241, 246 (9th Cir. 1994) (summarizing cases). The usual standard helps to ensure that stays would not be granted lightly.

*Crown Vantage* does not compel a different result. There, defendants in an adversary action filed by the debtor's trustee had sued the trustee in state court, alleging that the adversary action was barred by a prior settlement agreement between the defendants and the debtor. *See Crown Vantage*, 421 F.3d at 969. Citing the *Barton* doctrine,[4] which prohibits suits against court-appointed receivers in other fora without permission from the appointing court, the trustee successfully moved the bankruptcy court to enjoin the state court action. The district court vacated the injunction, finding that the trustee failed to show irreparable harm. *Id.* at 969-70. We reversed, stating that "[t]he only requirement for the issuance of an injunction under § 105 is that the remedy conform to the objectives of the Bankruptcy Code." *Id.* at 975. As we explained, it makes no sense to require a showing of irreparable harm in the context of *Barton*'s bright-line prohibition of unauthorized litigation against court-appointed receivers. Once such an action had been filed, "[t]he only appropriate remedy . . . is to order cessation of the improper action." *Id.* at 976. In other words, irreparable harm need not be shown because the movant was certain to succeed on its claim of a *Barton* violation. "If the movant has a 100% probability of success on the merits," the injunction should issue "without regard to the balance of the hardships." *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 965 (9th Cir. 2002) (citation and internal quotation marks omitted). However, there is no general rule prohibiting suits against non-debtors. *See*

---

[4]*Barton v. Barbour*, 104 U.S. 126 (1881).

*Chugach Forest Prods.*, 23 F.3d at 246-47. To obtain equitable relief, the party seeking the stay should be required to satisfy the usual preliminary injunction standard.

The parties also dispute what a bankruptcy court should consider with regard to the "likelihood of success" prong of the preliminary injunction standard. Appellants contend that Excel must show likelihood of success on its complaint in the adversary proceeding, specifically its claim that the arbitration violated the automatic stay under § 362(a). Excel rejoins that it needed to show only likelihood of success in reorganization.

**[5]** We hold that a debtor seeking to stay an action against a non-debtor must show a reasonable likelihood of a successful reorganization. "The inquiry for a preliminary injunction necessarily focuses on the outcome of a later proceeding, at which time the merits of the questions giving rise to the litigation will be decided." *Commonwealth Oil*, 805 F.2d at 1189. Within the confines of the instant adversary proceeding, however, there is no "later proceeding" at which time Excel's claims will reach final disposition. Excel has already received the maximum injunctive relief — a stay until confirmation of a reorganization plan — that the bankruptcy court could grant. *See Am. Hardwoods, Inc. v. Deutsche Credit Corp.* (*In re Am. Hardwoods, Inc.*), 885 F.2d 621, 624-27 (9th Cir. 1989) (bankruptcy courts lack the power to issue injunctions that outlast plan confirmation). In this context, the most relevant "future proceeding" is the debtor's reorganization. Because Excel's claim is ultimately that arbitration would harm its ability to reorganize, it makes sense to require a showing of a "reasonable likelihood of a successful reorganization." *Homestead Holdings, Inc. v. Broome & Wellington* (*In re PTI Holding Corp.*), 346 B.R. 820, 826 (Bankr. D. Nev. 2006) (considering likelihood of success in reorganization under merits prong of preliminary injunction inquiry); *see also Eagle-Picher Indus.*, 963 F.2d at 859-60 (same); *In re Monroe Well Serv., Inc*. 67 B.R. 746, 751-52 (Bankr. E.D. Pa. 1986) (same); *Otero Mills, Inc. v. Sec. Bank & Trust* (*In re Otero*

*Mills, Inc.*), 21 B.R. 777, 779 (Bankr. D.N.M. 1982) (same); *but see FTC v. First Alliance Mortgage Co.* (*In re First Alliance Mortgage Co.*), 264 B.R. 634, 653 (C.D. Cal. 2001) (collecting conflicting cases). Moreover, because the gravamen of Excel's adversary complaint is that the arbitration would harm the bankruptcy estate, adopting Appellants' approach would collapse the traditionally distinct merits and hardship prongs into a single hardship inquiry.

In sum, our usual preliminary injunction standard applies to applications to stay actions against non-debtors under § 105(a). In granting or denying such an injunction, a bankruptcy court must consider whether the debtor has a reasonable likelihood of a successful reorganization, the relative hardship of the parties, and any public interest concerns if relevant.

B.   *Proceedings Below*

**[6]** Both the bankruptcy court and the BAP applied incorrect legal standards. Citing *Am. Hardwoods*, 885 F.2d at 623, the bankruptcy court stated that a preliminary injunction is proper whenever an action in another forum "could conceivably have any effect on the administration of the bankruptcy estate." That is actually the standard for determining whether the bankruptcy court has *subject matter jurisdiction* over a motion for a preliminary injunction. *Id.* at 623. Whether the bankruptcy court has subject matter jurisdiction is a distinct question from whether an injunction should issue. The two inquiries cannot be identical; otherwise a bankruptcy court would be required to grant every preliminary injunction motion over which it has jurisdiction.

The BAP likewise applied an incorrect standard. The BAP relied on the "unusual circumstances" doctrine the Fourth Circuit developed in *Piccinin*, which provides an exception to the general rule that the automatic stay does not apply to actions against non-debtors. *Piccinin* held that the automatic stay may

be extended if unusual circumstances make the interests of the debtor and the non-debtor defendant inextricably interwoven. 788 F.2d at 998-1004 (affirming stay of actions against debtor's officers under a combination of § 362(a), § 105(a), and the court's inherent equitable powers); *see also S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1147-50 (5th Cir. 1987) (extending the § 362(a) automatic stay to action against debtor's alleged alter egos). The BAP treated the "unusual circumstances" doctrine and the usual preliminary injunction standard as separate and distinct bases for affirming the stay. That is error, because the "unusual circumstances" doctrine does not negate the traditional preliminary injunction standard. As we have noted, stays under the doctrine, "although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate." *Chugach Forest Prods.*, 23 F.3d at 247 n.6 (quoting *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)). Indeed, *Piccinin* itself applied the usual preliminary injunction standard in affirming the stay. 788 F.2d at 1008.

**[7]** The bankruptcy court and the BAP alternatively found preliminary injunctive relief warranted under the usual preliminary injunction standard. We find that the injunction cannot be affirmed under their application of the usual standard.

As discussed above, the first prong of the usual preliminary injunction standard is whether the debtor can demonstrate a reasonable likelihood of success on the merits. The bankruptcy court did not consider that issue at all. That failure to consider a critical element of the injunction standard is reversible error. The BAP did find that Excel had shown reasonable likelihood of a successful reorganization, but the BAP's finding is not supported by the record. The BAP noted that "Hoffman was actively marketing Excel's products in his consulting position." That mere fact is insufficient to show that Excel had a reasonable chance of successfully reorganiz-

ing. There is no indication in the record of what Hoffman's marketing activities are or how they could meaningfully contribute to Excel's reorganization. Excel's bankruptcy petition shows that it had no income from business operations during the past twenty-four months. Although it is not a high burden to show a reasonable likelihood of success in reorganization, the BAP's conclusion that Excel had done so amounted to an abuse of discretion because "the record contains no evidence on which [the BAP] rationally could have based that decision." *Benedor Corp. v. Conejo Enters., Inc.* (*In re Conejo Enters., Inc.*), 96 F.3d 346, 351 (9th Cir. 1996).

The next prong is the balance of hardship between the parties. A bankruptcy court must "identify the harms which a preliminary injunction might cause to defendants and . . . weigh these against plaintiff's threatened injury." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 676 (9th Cir. 1988) (citation omitted). The bankruptcy court and the BAP ignored the potential harm to Indivos. The bankruptcy court stated without explanation that the "limited delay in the process of the arbitration will not result in appreciable harm to Indivos [and] Solidus." However, Indivos had argued that it would suffer harm from losing its bargained-for right to bring an arbitration claim against Hoffman at a time of its choosing. *Accord PTI Holding*, 346 B.R. at 831 (weighing stay's adverse effect on bargained-for contractual rights). The bankruptcy court's "failure to identify, evaluate, and weigh the potential harm alleged by [Indivos] is reversible error." *Caribbean Marine Servs.*, 844 F.2d at 677.

The bankruptcy court did consider the potential harm to Excel, and found that (1) Hoffman might raise a defense of indemnification by arguing to the arbitrator that he acted as Excel's agent with a promise of indemnification from Excel; (2) denying the stay might lead to inconsistent results between the arbitration and the bankruptcy court; and (3) Hoffman might disclose privileged attorney-client communications, where Excel is the holder of the privilege, and Excel may

have to participate in the arbitration to protect its privilege. These findings are insufficient to support the conclusion that Excel stands to suffer irreparable harm if arbitration proceeds.

We do not see how Excel would be irreparably harmed if Hoffman argues to the arbitrator that he breached the contract as an agent of Excel. An agent is always liable for breaching an independent obligation that the agent owes to the injured party, in spite of the fact that the agent may have acted in accordance with a principal's instructions. *See* 3 B.E. Witkin, *Summary of California Law* §§ 197, 199 (10th ed. 2005). Indivos accuses Hoffman of violating a contract Hoffman signed. If that is proven, Hoffman is liable to Indivos whether or not he acted as Excel's agent. The bankruptcy court stated that agency arguments would create "enormous problems" for Excel. Aside from possible disclosure of privileged communications, which is discussed separately below, the bankruptcy court did not explain what those problems would be. Speculative injury cannot be the basis for a finding of irreparable harm. *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). In any event, even if Hoffman presents evidence that reflects badly on Excel, arbitration proceedings between Hoffman and Indivos cannot impose new liabilities on Excel for the simple reason that Excel is not a party to the arbitration.

The bankruptcy court and the BAP again engaged in speculation when they cited the risk of inconsistent judgments as justification for the injunction. The BAP explained:

> For example, the arbitrator might rule that Hoffman was acting as Excel's agent when he breached the settlement and the bankruptcy court might rule that he was not. Such inconsistent results could complicate Excel's litigation with Appellants, as well as any claim proceedings in respect to Hoffman's proof of claim for indemnification. Such complications would tax judicial resources.

The BAP's reasoning is unpersuasive. Although Hoffman repeatedly asserted his intention to defend the arbitration by claiming that he acted as Excel's agent, the issue is simply irrelevant to the arbitration. Hoffman is a party to the Settlement Contracts. If he breached the contract, he is liable to Indivos whether he acted as an Excel officer or in his own interest. The bankruptcy court expressed concern that the arbitrator might disagree with that proposition, but the bankruptcy court identified no plausible legal theory that might support such a disagreement.

The only way that Hoffman's agency status might harm Excel is if Hoffman has a right to indemnity from Excel and the arbitration creates liabilities that Hoffman can pass on to Excel. Other courts have stayed suits against a debtor's officers where "unusual circumstances" made the interests of the debtor and its officers inextricably intertwined. *See, e.g.*, *Piccinin*, 788 F.2d at 1007; *Eagle-Picher Inds.*, 963 F.2d at 860. "In the Ninth Circuit, the vitality of the 'unusual circumstances' exception is not clear." *Chugach Forest Prods.*, 23 F.3d at 247. We need not determine the vitality of that doctrine today, because the bankruptcy court's findings do not support the conclusion that "there is such identity between the debtor and [Hoffman] that the debtor may be said to be the real party defendant and that a judgment against [Hoffman] will in effect be a judgment or finding against the debtor." *Piccinin*, 788 F.2d at 999. The bankruptcy court made no findings on whether Hoffman has an indemnity agreement with Excel, or whether that agreement actually covers Hoffman's potential liabilities from arbitration. The bankruptcy court merely noted that Hoffman might state a "defense" of indemnification; the statement sheds little light on the scope and magnitude of Excel's actual exposure to Hoffman. Notably, unlike *Piccinin* and *Eagle-Picher Indus.*, there is no evidence that Excel has an insurance policy or other assets that would be immediately dissipated to cover a duty to defend and indemnify Hoffman.

The bankruptcy court also found that Excel will be harmed if Hoffman, to defend the arbitration, divulges privileged communication between him and Excel's counsel.[5] The only relevant evidence we have is Hoffman's statement that he will reveal privileged communication. Such conclusory allegations are insufficient to establish irreparable harm. *See Caribbean Marine Servs.*, 844 F.2d at 674-75. Ordinarily, the party asserting attorney-client privilege has the burden of establishing all of the elements of the privilege. *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000); *see also Admiral Ins. Co. v. U.S. Dist. Court*, 881 F.2d 1486, 1492 (9th Cir. 1989) (setting forth elements of privilege). There is no evidence in the record to show that the communication Hoffman threatens to reveal is in fact, or at least likely to be, protected by attorney-client privilege. Moreover, it is unclear how revelation of privileged communication would harm Excel in a way cognizable under the Bankruptcy Code. *See Am. Hardwoods*, 885 F.2d at 625 (injunction must be consistent with the Code's objectives). Section 105(a) is not a general remedy to prevent the introduction of inadmissible evidence in proceedings in which the debtor may take an interest. The record is silent on how disclosure of privileged communication will in and of itself hamper Excel's ability to reorganize, undermine the rights of Excel's creditors, or otherwise undermine the objectives of the Bankruptcy Code.

Excel argues that it will suffer harm in the form of litigation expenses it will incur if it chooses to participate in the arbitration to protect privileged communication. However, since the arbitration is not against Excel itself and is not subject to the automatic stay, Excel's choice to expend money to

---

[5]The BAP noted that "the question of who has the privilege, Excel, Hoffman, or both jointly, has never been determined," and found it unnecessary to address that question. The issue should not have been ignored. Excel's rights could be harmed only if Hoffman discloses information to which Excel holds the privilege. If Hoffman alone holds the privilege, he has the choice to assert or waive the privilege.

participate in the arbitration is not by itself sufficient to establish irreparable harm. Excel must show that the expenses will be substantial enough to interfere with its reorganization or harm creditors. *See EEOC v. Rath Packing Co.*, 787 F.2d 318, 325 (8th Cir. 1986) (litigation expenses insufficient to justify discretionary stay of a regulatory action that is not subject to the automatic stay); *First Alliance Mortgage*, 264 B.R. at 656 ("First Alliance presented no evidence other than conclusory declarations of counsel as to what the litigation costs would be if the multiple actions proceed separately."); *In re Gercke*, 122 B.R. 621, 627-28 (Bankr. D.D.C. 1991) (declining to enjoin state court document production order where debtor has not shown that the expenses "will be substantial enough to threaten the administrators' other current administrative tasks"). There is no evidence in the record on what the impact on Excel would be if it chooses to participate in the arbitration.

Although the bankruptcy court recited the usual preliminary injunction standard, the court failed to apply it. The court ignored both Excel's likelihood of success and the alleged harm to Indivos. Perhaps because the bankruptcy court initially granted the injunction under the mistaken view that any proceeding with any conceivable effect on the debtor should be enjoined, the court placed a much lower burden on Excel than what is ordinarily required to show irreparable harm. That is an abuse of discretion, particularly since Excel's weak showing on the likelihood of a successful reorganization heightened its burden to show irreparable harm. *See Caribbean Marine Serv.*, 844 F.2d at 674 ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief."); *see also Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003) (holding that the district court applied an improper legal standard by imposing a higher burden of proof for irreparable harm than warranted).

## V.   CONCLUSION

**[8]** We hold that a bankruptcy court asked to enjoin a proceeding between two non-debtors must balance the debtor's likelihood of successfully reorganizing with the relative hardship of the parties. Because the bankruptcy court abused its discretion by applying erroneous legal standards, we vacate the preliminary injunction and remand for further proceedings.

**REVERSED AND REMANDED**