T.C. Memo. 2015-98

UNITED STATES TAX COURT

KATHY L. RIGGS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16522-13L.                    Filed May 26, 2015.

        P failed to collect and remit employment taxes on behalf of a
corporation that she controlled.  This corporation's successor-in-
interest, a second corporation, eventually entered ch. 11 bankruptcy
and made several adequate protection payments to R.  These
payments were made by checks which indicated they were to be
applied against P's personal liability for the trust fund recovery
penalty.  R, however, applied these checks against the corporation's
tax debt and initiated this collection action against P.  At P's
collection due process hearing, the Appeals officer denied P currently
not collectible (CNC) status.  P appeals this determination under
I.R.C. sec. 6330.

        Held:  This Court has jurisdiction under I.R.C. sec. 6330
because the bankruptcy stay applicable to P's corporation does not
apply to her as an individual.

        Held, further, P is not entitled to CNC status because of the
equity in her assets.

**[\*2]**    <u>Held</u>, <u>further</u>, R correctly applied the payments against the corporate tax liability.


Kathy L. Riggs, pro se.

<u>Mark J. Tober</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


GOEKE, <u>Judge</u>:  Petitioner, Kathy Riggs, lived in Jacksonville, Florida, at the time she filed a petition with this Court.  Despite her legal obligation, she failed to collect and remit payroll taxes on behalf of Amber Construction Co. (Amber Construction), a corporation that she controlled.  Consequently, respondent assessed a penalty against her under section 6672 in the amount of Amber Construction's unpaid payroll taxes.  Petitioner timely filed a request for a collection due process hearing before an IRS Appeals officer.  The Appeals officer sustained the determination.  Petitioner now appeals this determination under section 6330(d).[1]

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times, unless otherwise indicated.

[*3]                              FINDINGS OF FACT

Petitioner incorporated Amber Construction in 1997 under the State law of

Florida.  At all times petitioner was the owner and president of Amber

Construction.  During its period of operation the company provided services to

general contractors in and around Jacksonville, Florida.  It also accrued substantial

unpaid Federal employment taxes related to certain periods from December 2003

to December 2011.

In November 2011 respondent issued petitioner a proposed assessment

regarding her personal liability for the trust fund recovery penalty based upon her

status as a responsible officer of Amber Construction.  In an attempt to collect the

unpaid employment tax of Amber Construction after it was assessed, respondent

also filed a lien against petitioner as the corporation's nominee in April 2012.

This corporate nominee lien attached only to an office building on Columbia Park

Drive (Columbia Park property).

Throughout this period petitioner continued to operate the contracting

business.  However, at some point she ceased using the entity Amber Construction

and instead began using a new wholly owned corporation, Amber Rebar, Inc.

(Amber Rebar).  This second corporation filed a petition for chapter 11 bankruptcy

on May 15, 2012.  On its bankruptcy schedules, Amber Rebar listed numerous

[*4] articles of personal property but no interests in real property. In these proceedings the bankruptcy court permitted Amber Rebar to pay petitioner a salary of $2,181[2] per week. The court eventually adjusted this amount to $1,095 per week.

In a separate proceeding before a District Court, respondent established that Amber Rebar was the successor-in-interest to Amber Construction's tax liabilities. Thus, in Amber Rebar's bankruptcy proceeding, respondent filed a proof of claim against the corporation for unpaid Federal employment taxes. Amber Rebar and respondent then entered into an adequate protection agreement that on October 3, 2012, was converted into an order by the bankruptcy court. Beginning on October 25, 2012, the agreement required Rebar to make monthly payments to respondent of $3,420. Amber Rebar complied with the order for seven months. Each check mailed by petitioner on behalf of Amber Rebar indicated that it was to be applied to petitioner's liability for the trust fund recovery penalty.

Eventually, respondent also initiated collection efforts against petitioner as an individual. On November 30, 2012, respondent issued a final notice of intent to levy on petitioner's personal assets. Subsequently, respondent filed a notice of Federal tax lien against petitioner. Petitioner then requested a collection due

---

[2]All amounts are rounded to the nearest dollar.

**[*5]** process hearing, seeking review of respondent's efforts to collect the trust fund recovery penalty by levy.

Petitioner argued at the hearing that she was entitled to noncollectible or currently not collectible (CNC) status because she had no disposable income. Petitioner claimed the bankruptcy court determined the amount Amber Rebar could pay the IRS as adequate protection after determining the officer salary petitioner needed to pay her monthly expenses. Thus, she asserted, her salary as set and adjusted by the bankruptcy court left no disposable income to pay the trust fund penalty.

The Appeals officer, however, noted there was equity in several of petitioner's assets. First, petitioner is the sole owner of the Columbia Park property with $92,540 of equity. Second, petitioner owns a boat jointly with her husband with $45,398 of equity. Third, before December 30, 2012, petitioner had an interest as a joint tenant with a right of survivorship with her parents in a residence on Oliver Creek Drive (Oliver Creek property) with $317,540 of equity. On December 30, 2012, petitioner transferred this property solely to her parents by quitclaim deed. At no point did petitioner pay taxes on the Oliver Creek property or claim it as an asset on a loan application.

**[*6]** Because of the equity in these assets that could be liquidated or borrowed against to pay the trust fund penalty, the Appeals officer concluded petitioner was not entitled to CNC status. No other collection alternatives were considered by the Appeals officer because none were requested by petitioner.

Petitioner has filed a petition with this Court seeking review of the Appeals officer's determination and respondent's allocation of the adequate protection payments. Throughout the administrative review process and at the time petitioner filed her petition with this Court, Amber Rebar had a pending bankruptcy case. The original bankruptcy case, filed on May 15, 2012, was dismissed on May 17, 2013. However, two days before, on May 15, 2013, petitioner filed a new bankruptcy petition. The second case did not close until September 30, 2014, well after petitioner's trust fund penalty case came before this Court in July 2013.

OPINION

I. Jurisdiction

This Court must first decide whether it has jurisdiction to review the Appeals officer's determination. If a bankruptcy stay was in place when the petition was filed, the petition would be invalid and we would lack jurisdiction. There are two relevant Bankruptcy Code provisions under which a stay may arise. Title 11 U.S.C. sec. 362 (2012) provides eight specific instances when civil

**[*7]** actions are automatically stayed by a pending bankruptcy. Title 11 U.S.C. sec. 105 (2012), on the other hand, authorizes a court to issue a stay in instances not provided for under 11 U.S.C. sec. 362(a). Solidus Networks, Inc. v. Excel Innovations, Inc. (In re Excel Innovations, Inc.), 502 F.3d 1086, 1094 (9th Cir. 2007); People Place Auto Hand Carwash, LLC v. Commissioner, 126 T.C. 359, 365 (2006). The court in Amber Rebar's bankruptcy did not issue a stay under 11 U.S.C. sec. 105. Thus, this Court will consider only whether the automatic stay under 11 U.S.C. sec. 362 included petitioner in its scope.

Title 11 U.S.C. sec. 362(a)(1) provides a stay for a proceeding "against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title". As an officer of Amber Rebar, petitioner claims respondent's action is stayed by this provision and the notice of determination was issued to her in violation of 11 U.S.C. sec. 362(a)(1) and was therefore invalid. Petitioner cites A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4th Cir. 1986), as support for this proposition.

The company in A.H. Robins manufactured a contraceptive device called the Dalkon Shield. Id. at 996. This device was eventually found to be defective, and the company filed for chapter 11 bankruptcy as a result of the growing number

[*8] of civil claims pending against it.  Id.  Though their claims against the company were stayed, plaintiffs attempted to proceed against several corporate officers and other codefendants.  Id.

In its analysis, the court noted that "[s]ubsection (a)(1) is generally said to be available only to the debtor," though it may apply to third parties where there is such "identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant".  Id. at 999.  The court recognized, however, that a stay would not extend to third parties that were "independently liable."  Id. (quoting In re Metal Ctr., Inc., 31 B.R. 458, 462 (Bankr. D. Conn. 1983)).  Ultimately, because the codefendants (other than the insurer) had rights to indemnity and status as additional insureds under the debtor's insurance policy, the court concluded the company was the real party defendant and that a judgment against the codefendants would in effect be a judgment against the debtor.  Thus, actions against the nondebtor corporate officers were stayed.

In the present case, Amber Rebar is not the "real party defendant."  The parties have presented no evidence or argument to show that petitioner will be indemnified by the corporation if she is forced to pay the trust fund recovery penalty.  Furthermore, the Court of Appeals for the Eleventh Circuit has held that an individual's liability for the trust fund recovery penalty is "separate and

**[*9]** distinct" from the payroll tax obligations imposed on employers.  United

States v. Huckabee Auto Co., 783 F.2d 1546-1548, 1549 (11th Cir. 1986).

Therefore, because petitioner is "independently liable" for this trust fund recovery

penalty and lacks "identity" with the corporate debtor, A.H. Robins would not

include petitioner within the scope of Amber Rebar's bankruptcy stay.

Petitioner has also failed to consider our holding in People Place Auto Hand

Carwash, LLC v. Commissioner, 126 T.C. 359 (2006).  In People Place the

taxpayer was an LLC, and its members were involved in bankruptcy proceedings.

Id. at 360.  When the IRS attempted to collect unpaid employment taxes from the

LLC, the company sought protection under 11 U.S.C. sec. 362(a) by claiming the

IRS action was automatically stayed by virtue of its members' pending bankruptcy

case.  Id. at 361.

This Court rejected the taxpayer's claims in People Place.  In doing so, we

acknowledged that under Robins, a bankruptcy stay may be extended to stay

actions against a nondebtor where the debtor is the 'real party defendant.'  Id. at

365.  We concluded, however, that a stay applicable to nondebtors "would not

arise pursuant to the automatic stay provisions of 11 U.S.C. sec. 362(a) but rather

pursuant to the bankruptcy court's equitable power to issue an order as 'necessary

or appropriate to carry out the provisions' of the Bankruptcy Code, as provided by

[*10] 11 U.S.C. section 105(a) (2000)." Id. Because the bankruptcy court did not issue an order under 11 U.S.C. sec. 105, we held that the IRS action against the LLC was not stayed as a result of its member's bankruptcy. Id.

Likewise, in Amber Rebar's bankruptcy, the court did not issue a stay under 11 U.S.C. sec. 105. Instead, the only stay applicable to the corporate debtor was the automatic stay provided for under 11 U.S.C. sec. 362(a). Therefore, because 11 U.S.C. sec. 362(a) does not apply to petitioner, respondent's collection action was not subject to a bankruptcy stay. As respondent issued a valid notice of determination and petitioner timely filed a petition for review, we have jurisdiction to consider the merits of the case.

II. Sustaining the Collection Action

  A. CNC Status

Petitioner claims the IRS Appeals officer erred by failing to designate her liability for the trust fund recovery penalty currently not collectible. Since this issue does not relate to petitioner's underlying liability, we will review the Appeals officer's denial of CNC status for abuse of discretion. See Goza v. Commissioner, 114 T.C. 176, 182 (2000). "An abuse of discretion occurs if the Appeals Office exercises its discretion 'arbitrarily, capriciously, or without sound

**[\*11]** basis in fact or law'." <u>Vinatieri v. Commissioner</u>, 133 T.C. 392, 400 (2009) (quoting <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999)).

CNC status, which suspends IRS collection efforts, "is a 'collection alternative' that the taxpayer may propose and that the Office of Appeals must take into consideration." <u>Wright v. Commissioner</u>, T.C. Memo. 2012-24, slip op. at 7. CNC status may be available if, "'based on the taxpayer's assets, equity, income and expenses,' he has no apparent ability to make payments on the outstanding tax liability." <u>Fangonilo v. Commissioner</u>, T.C. Memo. 2008-75, slip op. at 9 (quoting <u>Foley v. Commissioner</u>, T.C. Memo. 2007-242).

Petitioner claims that she was unable to sell or use any of her assets as collateral for a loan because of respondent's liens. Therefore, because she was unable to use the equity in these assets to pay her penalty liability, petitioner argues that the Appeals officer's denial of CNC status constituted an abuse of discretion.

Relying on the Internal Revenue Manual (IRM), respondent claims that an IRS lien does not reduce a taxpayer's collection potential. Respondent asserts that collection potential and eligibility for collection alternatives should be based on the net realizable equity (NRE) in petitioner's assets. NRE is measured by the extent to which an asset's quick sale value exceeds all liens with priority over a

**[\*12]** Federal tax lien. IRM pt. 5.8.5.4.1(1) (Oct. 22, 2010). Thus, only certain nontax liens reduce the valuation of an asset's equity under internal IRS policies.

Our decision in <u>Foley v. Commissioner</u>, T.C. Memo. 2007-242, supports respondent's position. In September of 2000 the taxpayers in <u>Foley</u> purchased a home financed through a mortgage with a balloon payment due in June 2007. <u>Id.</u>, slip op. at 2. In 2005 the IRS initiated a levy action against the taxpayers, and the Appeals officer denied the taxpayers' request for CNC status. <u>Id.</u> In sustaining this determination, we held that "the Appeals officer did not abuse his discretion in rejecting petitioners' request to postpone the levy until after June 2007 to allow petitioners to refinance or sell their residence." <u>Id.</u> at 6.

In the present case, petitioner also has substantial equity in a number of assets.[3] Petitioner has $92,540 of equity in the Columbia Park property. Petitioner also has a joint ownership interest in a boat with $45,398 of equity.

---

[3]Petitioner disputes that the Oliver Creek property should be considered in determining whether she is eligible for CNC status. Though she was listed on the deed as holding a joint interest in the property with her parents, petitioner claims this was for estate planning purposes and that she never truly owned the property. Because of petitioner's equity in the Columbia Park property and the boat, we do not reach the question of whether it was proper to also consider petitioner's share of the equity in the Oliver Creek property. Equity in the Columbia Park property and the boat is a sufficient reason to deny petitioner CNC status.

[*13] Despite this substantial equity in several assets, however, petitioner argues that her account should be designated currently not collectible because she lacks sufficient income to pay the trust fund recovery penalty. In Amber Rebar's initial bankruptcy case, petitioner's salary was set at $2,181 per week. The court eventually adjusted this amount to $1,095 per week, which petitioner claims was less than half of her typical yearly salary.

We addressed a similar claim in Fangonilo v. Commissioner, T.C. Memo. 2008-75. In Fangonilo, the taxpayer owed the IRS $17,138. Though the taxpayer lacked sufficient income to meet his living expenses, we upheld the Appeals officer's denial of CNC status because the taxpayer had an interest in an insurance policy worth at least $56,000. Id., slip op. at 9. Though we noted in Fangonilo that the value of the taxpayer's asset exceeded his tax liability, this was not dispositive of the issue. In Willis v. Commissioner, T.C. Memo. 2003-302, slip op. at 8, we held that the taxpayers were not entitled to CNC status where they had the ability to make payments in partial satisfaction of the tax debt. As a result, petitioner's lack of income is not determinative. We hold the Appeals officer's denial of CNC status was not an abuse of discretion, because of petitioner's equity in the boat and the Columbia Park property.

**[\*14]** B.  <u>Collection Alternatives</u>

Even if not entitled to CNC status, petitioner claims she is still entitled to a different collection alternative.  Section 6330(c)(2) lists the issues a taxpayer may raise at a collection due process hearing before an Appeals officer.  This list of enumerated issues specifically includes "offers of collection alternatives, which may include the posting of a bond, the substitution of other assets, an installment agreement, or an offer-in-compromise."  Sec. 6330(c)(2)(A)(iii).  However, this Court has held that "we do not have authority to consider section 6330(c)(2) issues that were not raised before the Appeals Office."  <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 115 (2007).

At her collection due process hearing, petitioner sought only to have her account placed in CNC status.[4]  Because petitioner did not raise the issue of other collection alternatives, we will not consider them on appeal.  <u>See</u> <u>Magana v. Commissioner</u>, 118 T.C. 488, 493-494 (2002) (refusing to consider a collection alternative based on hardship where the taxpayer failed to raise the issue before the Appeals officer).

---

[4]Petitioner's collection due process request stated:  "We are requesting that Ms. Riggs' personal account be designated as Currently Not Collectible ('CNC') / '53'd' or otherwise cross-referenced to reflect the monthly payments made via Amber Rebar, Inc.'s Chapter 11 Bankruptcy case."

**[*15]** III.  Application of Amber Rebar's Adequate Protection Payments

The last issue for the Court to address is the impact of Amber Rebar's adequate protection payments.  Respondent applied these payments to reduce Amber Rebar's tax debt, yet petitioner claims these payments should have been applied to reduce her personal liability for the trust fund recovery penalty.

If we determined that respondent's settlement officer made a legal error, we would not sustain the collection action regardless of the standard of review. See Alessio Azzari, Inc. v. Commissioner, 136 T.C. 178, 191 (2011); Swanson v. Commissioner, 121 T.C. 111, 119 (2003); see also Dixon v. Commissioner, 141 T.C. 173, 183-184 (2013).

In United States v. Energy Res. Co., 495 U.S. 545, 551 (1990), the Supreme Court held "that * * * [a bankruptcy court] may order the IRS to apply tax payments to offset trust fund obligations [rather than the non-trust-fund tax liabilities] where it concludes that this action is necessary for a reorganization's success."  Respondent rightfully distinguishes Energy Resources by noting that the bankruptcy court never ordered that Amber Rebar's adequate protection payments be applied towards petitioner's penalty liability.  Therefore, respondent argues the payments made by Amber Rebar were properly applied against the company's tax liability.

**[\*16]** However, each check petitioner mailed on behalf of Amber Rebar indicated it was "for" the trust fund recovery penalty. By the IRS' own policy, if a taxpayer "voluntarily tenders a partial payment that is accepted by the Service and the taxpayer provides specific written directions as to the application of the payment, the Service will apply the payment in accordance with those directions." Rev. Proc. 2002-26, sec. 1, 2002-1 C.B. 746, 746. It is clear that petitioner provided instructions on how the adequate protection payments were to be applied. However, petitioner's instructions are not controlling if the payment was involuntary. Tippin v. Commissioner, 104 T.C. 518, 527 (1995); Amos v. Commissioner, 47 T.C. 65, 69 (1966).

The adequate protection payments were directed by the bankruptcy court, and those payments were made with respect to Amber Rebar's liabilities, not petitioner's. Therefore, neither petitioner nor Amber Rebar, without permission from the bankruptcy court, would have the right to allocate the payments between Amber Rebar's tax liability and any residual liability she had individually for the trust fund recovery penalty.[5] Consequently, we hold that respondent had authority

_____

[5]See Dixon v. Commissioner, 141 T.C. 173, 193-194 (2013) ("Just as there is no Code provision explicitly mandating that an employer's (late) payment of employment tax must be credited toward a responsible person's liability for the section 6672 penalty, so too there is no Code provision explicitly mandating that

(continued...)

**[\*17]** to apply the seven months of adequate protection payments as respondent saw fit.

Accordingly,

Decision will be entered for respondent.

---

[5](...continued)
an employer's (designated late) payment of employment tax be credited toward the designated employee's liability for income tax. But in both cases * * * the payment of the one necessarily satisfies the other. The IRS must allow a credit in both situations[.]").